[Cite as *State v. Kemp*, 2024-Ohio-5733.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio | Court of Appeals No. L-24-1084 |
| | L-24-1085 |
| Appellee | L-24-1086 |
| | L-24-1087 |
| v. | |
| | Trial Court No. CR0202301971 |
| Amir Kemp | CR0202302539 |
| | CR0202202647 |
| Appellant | CR0202302675 |

**DECISION AND JUDGMENT**

Decided: December 6, 2024

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Lorrie J. Rendle, Assistant Prosecuting Attorney, for appellee.

Tyler Naud Jechura, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In this consolidated appeal, following guilty pleas, defendant-appellant, Amir Kemp, appeals the March 8, 2024 judgments of the Lucas County Court of Common Pleas convicting him of multiple offenses and sentencing him to an aggregate term of 78 months in prison. For the following reasons, we affirm in part, reverse in part,

and remand trial court case No. CR 202202647 so the trial court can enter a nunc pro tunc judgment entry that contains the consecutive-sentence findings that it made at the sentencing hearing.

## I. Background

{¶ 2} This appeal involves four separate cases.

{¶ 3} In CR 202202647 ("case 2647"), Kemp was indicted on September 27, 2022, with one count of escape in violation of R.C. 2921.34(A)(1) and (C)(2)(b), a third-degree felony. On December 19, 2022, Kemp entered a plea of guilty to the lesser-included offense of attempted escape, in violation of R.C. 2923.02(A), and R.C. 2921.34(A)(1) and (C)(2)(b), a fourth-degree felony. On January 5, 2023, the trial court sentenced Kemp to two years of community control and notified him that a violation of community control "will lead to a longer or more restrictive sanction . . . , including a prison term of 18 months as to Count 1."

{¶ 4} In CR 202301971 ("case 1971"), Kemp was indicted on June 28, 2023, with one count of forgery, in violation of R.C. 2913.31(A)(3) and (C)(1)(a) and (b) (count 1), and two counts of theft in violation of R.C. 2913.02(A)(3) and (B)(2) (counts 2 and 5), each a fifth-degree felony.[1] The indictment alleged that Kemp and a co-defendant committed these offenses at various times between August 2, 2019, and February 13, 2021.

---

[1] Counts 3 and 4 of the indictment alleged forgery and theft against his co-defendant.

2.

{¶ 5} In CR 202302539 ("case 2539"), Kemp was indicted on October 3, 2023, with having weapons while under disability in violation of R.C. 2923.13(A)(3) and (B), a third-degree felony (count 1); compelling prostitution in violation of R.C. 2907.21(A)(1) and (C), a third-degree felony (count 2); two counts of promoting prostitution in violation of R.C. 2907.22(A)(2) and (B)(1), each a fourth-degree felony (counts 3 and 4); felonious assault in violation of R.C. 2903.11(A)(1) and (D), a second-degree felony (count 5); and counterfeiting in violation of R.C. 2913.30(B)(4) and (C)(1), a fourth-degree felony (count 6). The indictment alleged that Kemp committed these offenses at various times between December 1, 2019, and July 31, 2021.

{¶ 6} In CR 202302675 ("case 2675"), Kemp was indicted on October 26, 2023, with possession of cocaine in violation of R.C. 2925.11(A) and (C)(4)(a) (count 1), and possession of a fentanyl-related compound in violation of R.C. 2925.11(A) and (C)(11)(a) (count 2), each a fifth-degree felony. The indictment alleged that Kemp possessed cocaine and a fentanyl-related compound on or about September 1, 2023—i.e., during the term of Kemp's community control in case 2647.

{¶ 7} According to the docket in case 2647, the state served defense counsel with several notifications of criminal activity, and Kemp's community control violation hearing was rescheduled on eight separate occasions—at his request—between June 1, 2023, and February 8, 2024. On February 8, 2024, the trial court considered Kemp's alleged community control violation in case 2647 in conjunction with a plea hearing in the other three cases, and the following occurred.

3.

{¶ 8} In case 1971, Kemp pleaded guilty to count 1 (forgery) and count 2 (theft), and the state agreed to seek dismissal of count 5 at sentencing.

{¶ 9} In case 2539, Kemp pleaded guilty to count 1 (having weapons under disability), count 2 (compelling prostitution), and count 6 (counterfeiting), and the state agreed to seek dismissal of the remaining counts at sentencing.

{¶ 10} In case 2675, Kemp pleaded guilty to count 2 (possession of a fentanyl-related compound), and the state agreed to seek dismissal of count 1 at sentencing.

{¶ 11} The trial court conducted a plea colloquy, and concluded that Kemp had made a knowing, intelligent, and voluntary decision to plead guilty to the charges. The court found Kemp guilty of the offenses as outlined in the various plea forms.

{¶ 12} In case 2647, Kemp admitted violating community control and waived a hearing. Kemp's counsel stated that "[w]e will acknowledge that by virtue of the convictions in the other three cases that we've just gone through that that would constitute a violation of his terms and conditions of community control. We specifically waive a hearing in that regard." The trial court confirmed that Kemp admitted the violation and waived his right to a hearing, and then found him to be in violation of the terms of his community control. The court ordered a presentence investigation report and continued the matters for sentencing.

{¶ 13} On March 4, 2024, the trial court held a combined sentencing hearing in all four cases. The court began the hearing by allowing Kemp's attorney to speak in mitigation. Counsel stated that Kemp needs help with drugs, alcohol, and mental health,

4.

and that he wants to get a job and prove that he can "do well." Counsel noted that the bulk of the offenses occurred several years ago and were therefore "dated" and "in the past." Kemp successfully completed critical thinking, decision making, anger management, and domestic abuse classes while in custody. His "erratic behavior" is due to his need for mental health services and drug treatment. Counsel acknowledged, however, that Kemp has pending criminal charges against him in other jurisdictions, including Lorain County and Monroe County, Michigan. Counsel nonetheless asked the court "to give him the opportunity to show the Court that his words are not hollow, that he would follow through if given the opportunity."

In response, the state asked the court to impose "the allotted 10-and-a-half years in prison." The state argued that Kemp committed "a slew of crimes, and he keeps committing crimes while he's in jail and in custody for the cases that are in front of us today." He has "never slowed down his criminal activity . . ." and keeps acquiring new felony charges. Additionally, he has "never been compliant with drug screens." The state also argued that Kemp is "clearly violent." Not only did he force his girlfriend to engage in prostitution in 2019—which was one of the cases before the court—but he "has now threatened his now girlfriend to engage in criminal activity with him or he would break her jaw, . . . or he would beat her ass." The state argued against community control "because it hasn't slowed him down yet . . ." and it did not think that community control sanctions ever would. Kemp "hasn't learned his lessons" and should therefore serve 10.5 years in prison.

{¶ 14} The trial court then allowed Kemp to speak on his own behalf.  He argued that the accusations "all stem from a 2019 to 2021 investigation" and "[i]t is now 2024, . . ." and he wants to "put all [his] legal troubles behind [him]."  He said that since being released in 2023, he's "only caught a couple minor misdemeanors."  After his 2023 release, he got a job and a driver's license, but the "only problem" he had was "substance abuse issues . . . ."  Regarding the prostitution charge, he said that he "was in a relationship with a woman who still to this very day prostitutes herself."  Regarding the forgery and theft charges, he claimed that his co-defendant became "his victim" only after "[s]he was told by the detective she was facing 10 or 15 years for Felony 5s."  He said that having to register as a sex offender for 25 years would be "quite the humiliation . . . ."  Kemp asked the court to recognize that the case concerned allegations "almost five years old . . ." and asked for a treatment-based sentence.

{¶ 15} The court proceeded to sentencing.  Regarding Kemp's community control violation in case 2647, the trial court found that Kemp was no longer amenable to community control and ordered him to serve 18 months in prison.

{¶ 16} As to his convictions in case 1971, case 2539, and case 2675, the trial court similarly found that Kemp was not amenable to community control and that prison was consistent with the purposes of sentencing under R.C. 2929.11.  In case 1971, the trial court sentenced him to 12 months in prison on count 1 (forgery) and 12 months in prison on count 2 (theft).  In case 2539, the trial court sentenced him to 24 months in prison on count 1 (having weapons under disability), 24 months in prison on count 2 (compelling

6.

prostitution), and 12 months in prison on count 6 (counterfeiting). In case 2675, the trial court sentenced him to 12 months in prison on count 2 (possession of a fentanyl-related compound).

{¶ 17} The trial court ordered the prison terms in case 2539—count 1 (24 months), count 2 (24 months), and count 6 (12 months)—to be served consecutively to each other. It also ordered the prison terms in case 1971, case 2539, and case 2675 to be served concurrently with each other, but consecutively to the prison term imposed in case 2647 for the community control violation (18 months), for an aggregate term of 78 months (or 6.5 years) in prison.

{¶ 18} Regarding the imposition of consecutive sentences, the trial court stated:

> The Court finds pursuant to . . . 2929.14(C)(4) that consecutive sentences are necessary to protect the public from future crime or to punish defendant, that consecutive sentences are not disproportionated [sic] to the seriousness of defendant's conduct or the danger that he poses to the public because defendant's criminal history and criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime of the defendant and that defendant was on community control when these matters were committed.

The trial court expressly found that these "same findings" applied to all of the consecutive sentences it had imposed.

{¶ 19} The trial court issued separate judgment entries, dated March 8, 2024, in each case. The trial court included findings relating to the imposition of consecutive sentences in the judgment entries for case 1971, case 2539, and case 2675, but not case 2647.

7.

**{¶ 20}** Kemp appealed, and assigns a single assignment of error for our review:

THE TRIAL COURT ERRORED [sic] WHEN IT SENTENCED

MR. KEMP TO CONSECUTIVE SENTENCES.

## II. Law and Analysis

**{¶ 21}** In his assignment of error, Kemp argues that the trial court erred by sentencing him to consecutive sentences because "the trial court only stated the statutory language" and did not "state its reasoning for imposing consecutive sentences[,]" and because the "journal entry is also devoid of the facts the court used in its statutory determination."

**{¶ 22}** Under R.C. 2929.14(C)(4), when a trial court imposes multiple prison terms for convictions of multiple offenses, it may require the offender to serve the prison terms consecutively if it finds that "consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public," and if it also finds any of the following:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 23} Thus, this statute requires the trial court to make three statutory findings before imposing consecutive sentences. *State v. Beasley*, 2018-Ohio-493, ¶ 252; *State v. Bonnell*, 2014-Ohio-3177, ¶ 26. It must find that (1) consecutive sentences are necessary to protect the public or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger that the offender poses to the public; and (3) R.C. 2929.14(C)(4)(a), (b), or (c) is applicable. *Beasley* at ¶ 252. "[T]he trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis in original.) *Id.* at ¶ 253, citing *Bonnell* at ¶ 37. While "a word-for-word recitation of the language of the statute is not required, . . ." a reviewing court must be able to discern that the trial court engaged in the correct analysis and the record must contain evidence to support the trial court's findings. *Bonnell* at ¶ 29.

{¶ 24} Here, Kemp does not argue that the trial court failed to make the required statutory findings at the sentencing hearing or in the sentencing entries. Rather, he claims that his consecutive sentences should be vacated because—although the trial court made the proper R.C. 2929.14(C)(4) findings—the trial court did not state its reasoning or specify the facts that support its determinations.

{¶ 25} Contrary to Kemp's arguments, "[a] trial court need not explain its reasoning for its findings as long as the record contains some evidence to support the trial

9.

court's findings." *State v. McIntoush*, 2024-Ohio-2284, ¶ 18 (6th Dist.), citing *Bonnell* at ¶ 29. Here, the trial court made the following findings at the sentencing hearing:

> The Court finds pursuant to . . . 2929.14(C)(4) that consecutive sentences are necessary to protect the public from future crime or to punish the defendant, that consecutive sentences are not disproportionated to the seriousness of defendant's conduct or the danger that he poses to the public because defendant's criminal history and criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime of the defendant and that defendant was on community control when these matters were committed.

Thus, the trial court made all three required findings under R.C. 2929.14(C)(4) because the trial court found (1) consecutive sentences are necessary to protect the public or to punish Kemp; (2) consecutive sentences are not disproportionate to the seriousness of Kemp's conduct or the danger he poses to the public; and (3) Kemp's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime (R.C. 2929.14(C)(4)(c)) *and* Kemp was on community control when the offenses were committed (R.C. 2929.14(C)(4)(a)). The trial court was not required to assert any additional reasoning or justification for these findings, and we must affirm the imposition of consecutive sentences "as long as the record contains some evidence to support the trial court's findings." *McIntoush* at ¶ 18.

{¶ 26} Our review in that regard is very deferential. In a plurality decision, *State v. Gwynne*, 2023-Ohio-3851, ¶ 5, *vacating State v. Gwynne*, 2022-Ohio-4607, the Ohio Supreme Court explained that "[t]he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial

10.

court's findings must be upheld unless those findings are clearly and convincingly not supported by the record." "Clear and convincing evidence" is "'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.'" *Id.* at ¶ 14, quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus. The lead opinion concluded that an appellate court "must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences." *Id.* at ¶ 15.

{¶ 27} Kemp fails to argue—let alone demonstrate—that the trial court's findings are clearly and convincingly not supported by the record. To the contrary, the record reflects that Kemp has a long criminal history that includes many felonies, including various types of drug charges, violent crimes, and gun offenses. Kemp's extensive criminal history, combined with the wide-ranging felonies at issue in these four cases—escape, forgery, theft, weapons under disability, compelling prostitution, counterfeiting, and possession of a fentanyl-related compound—certainly suggest that Kemp is a habitual offender and a serious danger to the public. Because the court's findings under R.C. 2929.14(C)(4) and (C)(4)(c) (criminal history) appear to be supported by the record, we must affirm.

11.

{¶ 28} But, we note that a "trial court must make the requisite findings *both* at the sentencing hearing and in the sentencing entry." (Emphasis in original.) *Beasley*, 2018-Ohio-493, at ¶ 253, citing *Bonnell*, 2014-Ohio-3177, at ¶ 37. Here, the trial court included its consecutive-sentence findings in its judgment entries for case 1971, case 2539, and case 2675 but failed to include its findings in the judgment entry for case 2647. For that reason, we must reverse and remand case 2647 to the trial court so that it can enter a nunc pro tunc entry setting forth the applicable consecutive-sentencing findings made at the sentencing hearing.

### III. Conclusion

{¶ 29} In sum, the trial court made the proper findings at the sentencing hearing to impose consecutive sentences under R.C. 2929.14(C)(4). The court was not required to provide any additional explanation to support its findings, and Kemp failed to demonstrate that the court's findings are clearly and convincingly not supported by the record. Finally, the trial court included its consecutive-sentence findings in its judgment entries for all cases except case 2647.

{¶ 30} Thus, Kemp's assignment of error is not well-taken. The trial court's judgments in case 1971, case 2539, and case 2675 are affirmed in all respects. The trial court's judgment in case 2647 is reversed and remanded for the limited purpose of entering a nunc pro tunc entry that includes the consecutive-sentence findings made at the sentencing hearing.

12.

**{¶ 31}** Kemp is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed, in part,
reversed, in part, and remanded.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.
*See also* 6th Dist.Loc.App.R. 4.


Thomas J. Osowik, J.                    _____

JUDGE

Christine E. Mayle, J.

_____

Myron C. Duhart, J.                     JUDGE
CONCUR.


_____

JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.